IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SIDNEY PATRICK MARTIN,<br>    Plaintiff,<br>v.<br><br>RANDALL MATHENA, *et al.*,<br>    Defendants. | Civil Case No. 7:19-cv-00218<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Sidney Patrick Martin, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, naming thirty-two individuals as defendants. Liberally construing his complaint,[1] he asserts three possible claims, although all stem from the same basic premise: that he was improperly confined for a lengthy period in segregation housing and that such confinement significantly and negatively impacted his mental and physical health, including exacerbating his previously-diagnosed mental illness.

His first claim is a claim of unsafe conditions pursuant to the Eighth Amendment, and his complaint identifies twenty-seven aspects of the "very poor and harsh conditions" at the segregation housing unit at Red Onion State Prison ("Red Onion"). (Compl. 1–2, Dkt. No. 1.) For example, his complaint references social isolation and his need to be in a group or a class or just talk to someone, and he describes in more detail the effects of the social isolation in opposing the summary judgment motion. His complaint also references physical or environmental problems with the cell or housing (bug infestation, the lights being on all the time,

---

[1] The case has had a somewhat confusing procedural history, but the operative complaint remains Martin's original complaint, Dkt. No. 1. Also, although the court is ruling on a renewed motion for summary judgment (Dkt. No. 66), that motion simply incorporates by reference a prior motion for summary judgment and supporting memorandum (Dkt. Nos. 46, 47),

not being able to see out the window, foul odors, insufficient calories resulting in weight loss); behaviors by other inmates that makes it difficult to sleep or to have "peace of mind"; and the lack of benefits or ability to do anything outside of his cell (a very small recreation cage, no religious services, classes, or groups, no ability to purchase items at the commissary or allow him personal possessions he already purchased, limited access to phone and emails, only three showers per week, etc.) (Compl. 1–2.)

Second, the court construes his complaint as asserting an Eighth Amendment claim of deliberate indifference to his serious medical needs based on a purported lack of treatment for his mental illness. Third, he seems to be making a species of a due process claim, arguing that defendants did not follow their own procedures concerning security classification determinations and hearings or provide timely and sufficient Institutional Classification Authority ("ICA") hearings to continue his placement in segregation.

Martin asks for injunctive relief in the form of being transferred from Red Onion, where he was housed at the time he filed his complaint and motion for preliminary injunction,[2] to the "Secured Allied Management Unit (SAM) at Greensville Correctional Center," and out of segregation housing. He also seeks compensatory damages. In a motion for preliminary injunction filed several months after his complaint, he likewise requests to be transferred from Red Onion and out of a segregation unit.

Defendants have moved for summary judgment as to his claims, both on the grounds that Martin failed to exhaust his administrative remedies and because his claims fail to state a viable constitutional claim against any of the named defendants. (*See generally* Mem. Supp. Mot.

---

[2] Martin has recently been transferred to Sussex I State Prison. (*See* Dkt. No. 86.) The record does not reflect whether he is still housed in a segregation unit, but it appears that he could not be, based on an affidavit submitted by defendant, which states that Red Onion "is the only VDOC institution that houses security Level S [segregation] inmates." (Collins Aff. ¶ 12 & Encl. A, Dkt. No. 47-1.)

Summ. J. 2, Dkt. No. 47.) Martin has filed numerous documents responding to both defendants' initial motion for summary judgment and their renewed one, and the court has considered all of those submissions (Dkt. Nos. 62, 64, 65, 73, 79, 81, 82).[3]

Upon review of the record, and for the reasons set forth in this opinion, the court concludes that there are disputes of fact concerning whether Martin exhausted his available administrative remedies as to his claims. Thus, the court will deny defendants' motion for summary judgment and refer the matter to United States Magistrate Judge Joel C. Hoppe for proceedings on exhaustion. Defendants also have moved for summary judgment on the merits of plaintiff's claims, and their motion for summary judgment on those issues will be denied without prejudice, pending a determination as to exhaustion.

The court notes, however, that defendants' motion and briefing fail to address a potentially relevant case: *Porter v. Clarke*, 923 F.3d 348 (4th Cir. 2019), which was issued on May 6, 2019— approximately one month before defendants' initial motion for summary judgment and three months before their renewed motion.[4] Indeed, defendants even rely in part on a case that *Porter* discussed and distinguished: *Mickle v. Moore*, 174 F.3d 464 (4th Cir.

---

[3] Some of these documents, especially Dkt. Nos. 81 and 82, are voluminous and contain lengthy documents, many of which have little, if any, relevance to the issues in Martin's case. Moreover, Martin devotes much of his briefing and declarations to conditions at Red Onion *before* he was ever housed there. (*See generally* Dkt. No. 62.)

[4] In *Porter*, the Fourth Circuit affirmed the district court's grant of summary judgment in plaintiffs' favor and award of injunctive relief regarding the conditions of confinement on Virginia's death row prior to 2015. In doing so, the court looked to evolving standards of decency and a significant amount of recent scientific and other literature recognizing that prolonged solitary confinement can constitute a condition that poses a substantial risk of serious harm for Eighth Amendment purposes. 923 F.3d at 355–58.
  The *Porter* court did not state that prolonged placement in solitary confinement was automatically unconstitutional. Instead, it held that "a legitimate penological justification can support even prolonged solitary detention of a particular inmate." 923 F.3d at 362–63 & n.2. It explained, however, that if a prison lacked a legitimate justification for prolonged solitary confinement, "then the official is presumptively acting with deliberate indifference to that risk," *id.* at 362. *See also Rivera v. Mathena*, 795 F. App'x 169 (4th Cir. Nov. 19, 2019) (relying on *Porter* to reverse the district court's grant of defendants' summary judgment motion on an Eighth Amendment claim, where plaintiff alleged that he was deprived of showers and recreation for lengthy periods of time while in segregation at Red Onion).

1999). *Porter*, 923 F.3d at 358–59. *Porter* noted that *Mickle* pre-dated significant amounts of research concerning the "serious psychological and emotional risks posed by conditions of confinement" similar to those on Virginia's death row, including special housing units in jails and prisons. *Id.* (*But see* Mem. Supp. Mot. Summ. J. 12–13 (citing *Mickle*, 174 F.3d at 472, although calling it by a related name: *In re Long Term Admin. Segregation of Inmates*).) Accordingly, defendants are advised that, if the exhaustion issue is determined in Martin's favor and his claims go forward on their merits, the court will require additional briefing addressing *Porter*'s applicability to Martin's claims.

I. BACKGROUND

Because the court rules only on exhaustion at this time, it is unnecessary to go into significant detail concerning Martin's claims. In essence, after receiving a number of disciplinary infractions, Martin's security level was increased from Level 5 to Level "S" (segregation) by the ICA, which is the facility staff person designed to conduct offender case review hearings. After approval of that determination, it was determined that Martin should be transferred to Red Onion, which is the only VDOC institution that houses security Level S inmates. He was transferred to Red Onion in April 2018, where he was assigned to a segregated housing unit, which he describes as being extremely isolating and having a very negative effect on his mental health. He remained in that housing unit through the filing of his complaint in March 2019, and at least through defendants' first motion for summary judgment, which was filed in June 2019.

The facts relevant to his efforts to exhaust are discussed in context below.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

### B. Exhaustion

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549

U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, *Porter*, 534 U.S. at 524, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Further, to comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See id.* at 90–94 (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)).

Virginia Department of Corrections ("VDOC") Operating Procedure (OP) 866.1 is the mechanism used to resolve inmate complaints. (*See* Adams Aff. & Encl. A, Dkt. No. 47-3.) OP 866.1 requires that, before submitting a formal grievance, an inmate must demonstrate that he has made a good faith effort to resolve a grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. This may be accomplished by submitting an Informal Complaint form to the Grievance Department at the appropriate institution. The Informal Complaint is then forwarded to the appropriate staff for investigation and response. Prison staff should respond to an inmate's Informal Complaint within 15 calendar days. If the inmate is dissatisfied with the response to the Informal Complaint, or if fifteen days have passed from the date the informal complaint was logged without the inmate receiving a response, he may submit a regular grievance on the issue.

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. Prior to review of the substance of a regular

6

grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. Among other requirements, a regular grievance may only contain one issue and generally must be submitted within thirty days from the date of the occurrence or incident. A grievance meeting the criteria for acceptance is logged in on the day it is received. If the grievance does not meet the criteria for acceptance, prison officials complete the "intake" section of the grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman. Relevant here, "[a] regular grievance that is not accepted during the intake process—and for which the intake decision is upheld—does not satisfy the exhaustion requirement." (*Id.*, ¶ 17.)

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Further, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Martin's challenges to his continued placement in the segregation unit, whether characterized as Eighth Amendment claims (such as a conditions-of-confinement claim or a claim that defendants were deliberately indifferent to his medical needs) or characterized as a type of "due process claim" based on his argument that VDOC did not follow its policies or hold ICA evaluations as required, are claims that must be exhausted under OP 866.1.[5] (*See* OP 866.1, § (M)(1), Dkt. No. 47-3 at 10.) Martin does not argue to the contrary.

---

[5] Some due process claims, such as those challenging disciplinary proceedings, as not grievable under the policy. (*See* OP 866.1, § (M)(2), Dkt. No. 47-3 at 10.)

Defendants argue that Martin did not properly exhaust the available administrative remedies regarding his claims. Specifically, they note that he submitted an informal complaint dated April 30, 2018, complaining about being housed in long-term segregation and describing his resulting mental anguish. He received a response, but did not seek further review of that informal complaint, or file any grievance within the deadline permitted. (Adams Aff. ¶¶ 13–14 & Encl. B.)

More than four months later, Martin submitted a regular grievance dated September 13, 2018, again complaining that his mental health was being negatively impacted by being confined in long-term segregation. (*Id.*, ¶ 15 & Encl. C.) That grievance was not accepted for intake because it did not meet intake criteria. Instead, grievance coordinator Jennifer Messer checked a box stating that the grievance contained insufficient information and wrote: "If you want to grieve your housing status attach your DOC-11H." Consistent with the policy concerning grievances rejected at intake, the grievance was not assigned a log number and was returned to Martin. (*Id.*) Martin appealed the intake decision to the Regional Ombudsman, who upheld it. (*Id.*, ¶ 18.)

Martin does not dispute any of the foregoing facts concerning exhaustion and acknowledges that he did not fully exhaust administrative remedies prior to filing suit. But in one of the declarations he provided in opposing summary judgment (Martin. 08/14/19 Decl., Dkt. No. 73), he states that he "did in fact exhaust all 'available' administrative remedies and through no fault of his own was prevented from being able to avail" himself of them because "Defendant Messer [used] her manipulative tactics to hinder [him] from getting [his] grievance logged." (Martin 08/14/2019 Decl. ¶ 4.) Specifically, he avers that Messer "lied and sent everything back but the DOC 11-H form" and that she did so to block access from the court.

(*Id.*, ¶ 6.) He also claims that Messer "is known for messing up the grievance procedure." (*Id.*, ¶ 7.) He specifically states that he attached the required form to his grievance and Messer "simply marked insufficient information, kept or threw away" the form, and sent the grievance back to him. (Dkt. No. 62 at 61.) He notes that resubmitting to Messer would have just resulted in another denial at intake. (*Id.*)

Based on these sworn assertions by Martin, the court concludes that there is a dispute of fact as to whether he was prevented from exhausting his administrative remedies prior to filing suit. (*See also* Dkt. No. 62 at 8 (Martin's contention that it is a disputed fact whether "Messer manipulated the grievance process").) If his assertions are true and he submitted the proper form and Messer lied about that, then it is unclear what else he could have done to try to exhaust. Although defendants state that he could have obtained another copy of the form, Martin disputes this; he states that he is only allowed one copy of the document. (Dkt. No. 62 at 62.) In any event, Martin should not be required to resubmit the same form to the same person, who denied receiving it the first time in order to block his access to the courts. Accordingly, the court concludes that there is a dispute of fact as to whether the grievance procedure was unavailable to Martin because of Messer's actions. Thus, the motion for summary judgment will be denied as to exhaustion, and the matter referred for an evidentiary hearing.[6]

There is an additional wrinkle in this case concerning exhaustion. Specifically, as part of his declaration, Martin has provided a number of documents reflecting that he now has fully

---

[6] Martin also contends that the motion for summary judgment is "premature," and he cites generally to Rule 56(d), formerly Rule 56(f), which directs that a court may defer consideration of a summary judgment motion or deny it "if the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). (*See* Dkt. No. 73 at 1 (referring to Rule 56(d)). He does not identify or explain, however, what discovery he needs in order to respond to allegations concerning his efforts to exhaust. (*Cf.* Dkt. No. 62 at 2–3 (discussing reports and other evidence he wants, but none which obviously relate to exhaustion, as opposed to the request for summary judgment on the merits of his claims).) Thus, the court concludes that he has failed to show he needs additional facts not within his own knowledge to oppose summary judgment as to exhaustion.

9

exhausted grievances on the general issue in his lawsuit (his long-term placement in segregation), although he did so *after* he filed this lawsuit. (*See* Dkt. No. 73-3, at 1–4 (reflecting an informal complaint dated June 5, 2019, a regular grievance dated June 9, 2019, and responses to his Level I and Level II responses dated in July 2019).) Defendants do not address these post-filing efforts at exhaustion, which occurred after they filed their first motion for summary judgment. And they are insufficient for purposes of the PLRA, which requires exhaustion *before* filing suit. *See, e.g.*, *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 675 (4th Cir. 2005) (stating that the PLRA requires exhaustion "before filing an action"); *see also Hayes v. Stanley*, 204 F. App'x 304, 304 n.1 (4th Cir. 2006) ("We conclude that the defect in this case (the failure to exhaust administrative remedies) can only be cured by something more than an amendment to the complaint . . . .").

In light of his post-filing exhaustion efforts, however, another course of action is available to Martin. Specifically, if Martin would rather rely on his exhaustion efforts in June and July 2019, he may voluntarily dismiss this lawsuit without prejudice and file a new complaint asserting the same or similar claims, subject to the two-year limitations period for claims under § 1983.[7]

**C. Motion for Preliminary Injunction**

In his motion for preliminary injunction, Martin requests transfer out of segregation housing and to the "Secured Allied Management Unit (SAM) at Greensville Correctional Center." Prisoners are not entitled to placement at any particular institution; instead, "prison

---

[7] Martin filed two other cases last year in this court, but neither asserts the same claim. In *Martin v. Taylor*, No. 7:19-cv-604, Martin alleges that the defendants retaliated against him because of this lawsuit and his exercise of First Amendment rights. The second, *Martin v. Artrip*, No. 7:19-cv-577, was dismissed without prejudice after Martin failed to timely file an amended complaint. (*Id.*, Dkt. Nos. 11, 12.) Martin has since filed a proposed amended complaint that asserts claims based on religion and deprivation of property. (*Id.*, Dkt. No. 13.)

officials have broad discretion to determine the facility at which an inmate is housed." *Clark v. Robinson*, No. 7:06CV00448, 2006 WL 2098950, at *1 (W.D. Va. July 26, 2006). Thus, his request to be placed at a specific facility is denied.

To the extent Martin requests to be moved from a segregation housing unit, however, it appears that has already occurred. Although Martin's *current* Security Level is not specifically stated by either party, it appears from the record that he is no longer a Security Level S, such that he is housed in a segregation unit. As noted above, Martin was transferred to Sussex within the last month, and defendants have presented testimony that Red Onion is the only VDOC entity that can house Security Level S inmates.

The jurisdiction of federal courts is limited to live cases or controversies. U.S. Const. art. III, § 2. When a claim no longer presents a viable legal issue to resolve, the claim becomes moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The transfer or release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (prisoner's transfer rendered moot his claims for injunctive and declaratory relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that transfer of a prisoner rendered moot his claim for injunctive relief); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (holding that transfer mooted claim for injunctive relief).

In light of his transfer out of segregation and to Sussex, any possible preliminary injunctive relief sought by Martin has effectively occurred. For these reasons, the court will deny as moot Martin's motion for preliminary injunction.

## III. CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment will be denied. As to exhaustion, the motion is denied and will be referred for further proceedings to United States Magistrate Judge Joel C. Hoppe. With regard to defendants' request for summary judgment on the merits of Martin's claims, the motion will be denied without prejudice.

Additionally, as noted above, if Martin would prefer to rely on his later exhaustion efforts rather than continue to contest exhaustion in this case, he may voluntarily dismiss this case without prejudice and refile his claims in a new lawsuit, subject to the applicable statute of limitations.

Lastly, Martin's motion for preliminary injunction will be denied as moot.

An appropriate order will be entered.

Entered: March 27, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge